IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EDWIN LASAUN WILLIAMS,

        Petitioner,

    v.

GUY HALL,

        Respondent.

Civil No. 06-1535-BR

OPINION AND ORDER

ROBERT A. WEPPNER
One S.W. Columbia Street
Suite 1850
Portland, OR  972358

      Attorney for Petitioner

JOHN R. KROGER
Attorney General
JACQUELINE SADKER
Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, OR  97301

1 - OPINION AND ORDER -

BROWN, Judge.

Petitioner brings this habeas corpus action pursuant to 28 U.S.C. § 2254.  For the reasons that follow, the First Amended Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2254 is DENIED, and this action is DISMISSED.

## SUMMARY OF FACTS

On December 20, 1997, Petitioner went to an "after-hours club" (which is generally understood to be an illegal establishment whose patrons frequently have criminal backgrounds and come to the club to consume alcohol, gamble, and/or use controlled substances).  The club Petitioner visited served alcohol and was owned by Carol Battle.  Stacy Saab helped Battle run the club by organizing dominoes games and generally ensuring that everyone was having a good time.  Saab also checked identifications to make sure guests were old enough and to deny entry to guests who were intoxicated or armed.

Petitioner knew the club had a "no weapons" rule, but he carried a firearm anyway that night when he went to the club.  In addition to Petitioner, Saab was also armed that evening and had been seen with a firearm on previous occasions.  Battle assumed Saab was carrying a firearm that night "to protect us."

While several people at the club were drinking and playing games of chance, and at least one person was smoking marijuana,

Petitioner entered the club twice.   The first time, he paid a cover charge and the club doorman searched Petitioner for weapons. Petitioner left the club and, on his return, was again searched for weapons.   Although the doorman did not find any weapons in either search, Petitioner was, as noted, armed with a gun he hid in the waistband of his pants so it would not be detected during the doorman's frisk.

Ritchie Jones was also at the club that night.   Petitioner's girlfriend and the mother of his child was also the mother of Jones' child.   Although Petitioner and Jones generally appeared to get along, there was some history of animosity between them.

While Petitioner was inside after his second entry to the club, an altercation occurred and an exchange of gunfire followed. Saab was fatally shot, Petitioner was wounded, and an ambulance ultimately took Petitioner to the hospital where he underwent surgery for his gunshot injuries.

Later that day, at about 11:00 a.m., two police detectives contacted Petitioner at the hospital.   Petitioner still had anaesthesia in his system, and he was receiving morphine. Although the detectives realized Petitioner was not well enough to be interrogated, they introduced themselves, told Petitioner he was in custody for the shooting, and asked how they could get in touch with someone else on his behalf to let them know of his situation.   Petitioner gave them his mother's telephone number.

The detectives returned to Petitioner's room in the hospital the next day at about the same time.  Petitioner's nurse told them Petitioner was no longer taking morphine, but Petitioner was then receiving Demerol.  Nevertheless, the nurse told the detectives Petitioner was oriented and tracking, and the detectives' initial observations corroborated the nurse's description of Petitioner's condition.

After the detectives read Petitioner his *Miranda* rights, Petitioner said he understood them and signed a waiver form.  The detectives then interrogated Petitioner.

Petitioner first relayed a story blaming the shooting on someone else in the club.  Skeptical of Petitioner's claims, the detectives asked Petitioner to re-tell the story with more details.  Petitioner began to do so, but, finally, told the detectives he would tell them "the truth."

Petitioner then said that the person he originally identified as the shooter actually gave Petitioner the gun he carried into the club, and that he wanted a gun because of earlier experiences being robbed at after-hours clubs.  Petitioner explained he was shifting the gun from one location to another when another patron saw it, someone grabbed him, and Saab began to reach for something as though he was reaching for a gun.  Another patron tried to take Petitioner's gun away and Petitioner was told to leave.  According to Petitioner, he was in the process of leaving the club when he

was shot in the back.  Petitioner asserted he turned around and fired back at the man who had shot him, firing three shots in quick succession and then running upstairs.

At this point, Petitioner's interrogation had been going on for about an hour and twenty minutes, and the detectives decided to give Petitioner a chance to rest before they tape-recorded his statement.  They returned about 90 minutes later and, with Petitioner's consent, recorded his statement in substantially the same form as his earlier confession.

## PROCEDURAL BACKGROUND

On December 30, 1997, a Multnomah County grand jury indicted Petitioner for one count of aggravated murder, one count of murder, one count of felony murder, and four counts of burglary in the first degree.  The burglary charges alleged Petitioner unlawfully and knowingly entered and remained in the after hours club "with the intent to commit the crimes of Unlawful Use of a Weapon and Unlawful Possession of a Firearm."

Prior to trial, Petitioner's counsel filed a motion to suppress Petitioner's statements at the hospital, arguing they had been made involuntarily and his waiver of his *Miranda* rights had been obtained improperly.  Following an evidentiary hearing on the issue, the trial judge denied the motion to suppress.

A jury acquitted Petitioner on the aggravated murder and murder charges but found him guilty of felony murder and three counts of burglary in the first degree.

Petitioner filed a motion for new trial alleging juror misconduct based on a series of letters written by one of the jurors to defense counsel and to the trial court. These letters alleged that the jury foreman refused to allow the jurors to consider evidence favorable to Petitioner, that the juror was prevented from participating in the deliberations, and that other jurors had changed the letter-writer's not-guilty ballot to guilty, telling her that the vote was wrong. The trial judge declined to hold an evidentiary hearing regarding these allegations and denied the motion for a new trial.

Petitioner filed a direct appeal. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. *State v. Williams*, 183 Or. App. 533, 53 P.3d 471 (2002), *rev. denied*, 335 Or. 255, 66 P.3d 1025 (2003).

Petitioner then sought state post-conviction relief ("PCR"). Following an evidentiary hearing, the PCR trial judge denied relief. On appeal, the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. *Williams v. Santos*, 206 Or. App. 237, 136 P.3d 757, *rev. denied*, 341 Or. 198, 140 P.3d 581 (2006).

6 - OPINION AND ORDER -

On October 27, 2006, Petitioner filed his federal habeas corpus petition. In his First Amended Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2254, he alleges the following grounds for relief:

> **Ground One:** Petitioner's conviction of the three counts of burglary, and the one count of felony murder, must be vacated as the record contains insufficient evidence from which a rational finder of fact could find beyond a reasonable doubt that he entered or remained unlawfully in the premises where the crime(s) of which he was convicted took place in violation of the standard enunciated in *Jackson v. Virginia* and the Fourteenth Amendment to the U.S. Constitution.
>
> **Ground Two:** The statutory language of the indictment charging the gravamen of burglary -- *i.e.,* that Petitioner's "unlawful" presence in the after-hours club was made so only by his having allegedly carried and used a firearm in a manner that supposedly violated purported "house rules" of the after-hours premises -- was constitutionally vague as to him on the facts of this case in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution.
>
> **Ground Three:** In his motion for a new trial, Petitioner sought an evidentiary hearing on allegations of juror misconduct, supported by letters from one of the jurors. That juror alleged, among other things, that the jury foreman had not allowed the jury to consider certain of the defendant's trial evidence and arguments. The trial court's denial of an evidentiary hearing on these allegations, and denial of a new trial, violated Petitioners' rights guaranteed under the Sixth Amendment to the U.S. Constitution.
>
> **Ground Four:** Petitioner's statements to the police, taken from him while he was in his hospital bed under the influence of narcotics and suffering from a gunshot wound, were involuntary, and their use against him violated the Fifth Amendment to the U.S. Constitution.

>    **Ground Five:** Although the error was preserved at trial,
>    Petitioner's counsel on direct appeal failed to assign
>    as error on appeal the trial court's denial of the
>    motion for acquittal based on the fatal variance between
>    the crimes alleged in the indictment and the State's
>    proof at trial, thereby denying Petitioner the effective
>    assistance of counsel on direct appeal.

Respondent contends Petitioner procedurally defaulted the claims alleged in Grounds One and Three and that, in any event, relief on the merits is not warranted on these claims. Respondent also argues the remaining grounds for relief fail on the merits.

## DISCUSSION

## I.   Procedural Default

### A.   Legal Standards

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1); *Cook v. Schriro*, 538 F.3d 1000, 1025 (9th Cir. 2008), *cert. denied*, 129 S.Ct. 1033 (2009). The exhaustion requirement insures that the state courts, as a matter of federal-state comity, will have the first opportunity to pass upon and correct alleged violations of federal constitutional guarantees. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).

A state prisoner satisfies the exhaustion requirement by fairly presenting his claim to the appropriate state courts at all appellate stages afforded under state law. *Cook*, 538 F.3d at

1025; *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). A claim is fairly presented when it apprises the state court of the facts and legal theory upon which the claim is premised. *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005). "In [the Ninth Circuit], a petitioner must make the federal basis of the claim explicit either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law." *Id.* at 668. For the purposes of exhaustion, "a citation to a state case analyzing a federal constitutional issue serves the same purpose as a citation to a federal case analyzing such an issue." *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003); *see also Lyons v. Crawford*, 232 F.3d 666, 670 n.3 (9th Cir. 2000) (noting that a third possibility for exhausting state remedies besides referencing specific provisions of federal constitution or statutes or cite to federal case law is to cite pertinent state case law explicitly applying federal law).

When a state prisoner fails to exhaust his federal claims in state court and the state court would now find the claims barred under the applicable state procedural rules, the federal claims are procedurally defaulted. *Coleman*, 501 U.S. at 735 n.1. Similarly, if a federal constitutional claim is expressly rejected by a state court on the basis of a state procedural rule that is independent of the federal question and adequate to support the judgment, the claim is procedurally defaulted. *Id.* at 729-30;

9 - OPINION AND ORDER -

*Cook*, 538 F.3d at 1025.   Habeas review of procedurally defaulted claims is barred unless the petitioner demonstrates cause for the procedural default and actual prejudice, or that the failure to consider the claims will result in a miscarriage of justice. *Coleman*, 501 U.S. at 750; *Cook*, 538 F.3d at 1028.

**B.   Analysis**

**1.   Ground One - Insufficient Evidence to Support Burglary Convictions**

On direct appeal, Petitioner argued there was insufficient evidence to support his Burglary convictions.   Respondent nonetheless asserts this claim is procedurally defaulted because Petitioner's appellate brief did not cite any federal constitutional provisions or federal case law and did not make any mention of the Fourteenth Amendment.   Because federal and state standards for sufficiency of the evidence are identical, however, Petitioner contends this federal, sufficiency-of-the-evidence claim was exhausted on direct appeal.

The Court notes Oregon state and federal constitutional standards for insufficiency of the evidence are identical,[1] and, therefore, it may be argued that Petitioner's reliance upon state law also "fairly presented" his federal constitutional claim.   In

---

[1] *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Rogers*, 313 Or. 356, 384, 836 P.2d 1308 (1992), *cert. denied*, 507 U.S. 974 (1993).

*Duncan v. Henry*, 513 U.S. 364, 365-66 (1994), the Supreme Court left open the question whether a claim can be properly exhausted when it is unclear from the petition whether the petitioner is relying on a state or federal standard, and the state and federal standard are not merely similar, but are functionally the same. In *Sanders v. Ryder*, 342 F.3d 991, 999-1000 (9th Cir. 2003), the Ninth Circuit held an ineffective assistance of counsel claim was exhausted because the Washington state courts analyzed both federal and state law ineffective assistance claims under the very same *Strickland* standard.

*Sanders*, however, is distinguishable from this case because a *pro se* filing was relied upon for exhaustion, and the court emphasized that, under Ninth Circuit law, *pro se* petitions are held to a more lenient standard than counseled petitions. *Id*. at 999 (citing *Peterson*, 319 F.3d at 1159.) The court emphasized "the complete exhaustion rule is not to trap the unwary *pro se* prisoner." *Id*. (citation omitted).

As noted, the Supreme Court has not yet spoken on this issue, and the Ninth Circuit's reasoning in *Sanders* is not dispositive because it was largely based on petitioner's *pro se* status when he filed the document in question. Because the Ninth Circuit has yet to explicitly extend its reasoning in *Sanders* to counseled appellate briefs, the Court declines to do so here. Other trial

courts, however, have extended *Sanders* in similar circumstances. *See Lowe v. Schomig*, 2007 WL 773881 *3 (D. Nev., Mar. 9, 2007) (*Sanders* reasoning extended where state and federal standards were identical and counseled brief included reference only to state law on insufficient evidence claim).  Thus, because the law on whether presentation of an identical state constitutional claim is a fair presentation of a federal claim continues to evolve, the Court will consider the merits of Petitioner's sufficiency of the evidence claim, below.

> ### 2.    Ground Three - Failure to Hold Evidentiary Hearing on Juror Misconduct Claim

On direct appeal, Petitioner also argued the trial court erred in not holding an evidentiary hearing on juror misconduct. In his brief to the Oregon Court of Appeals, Petitioner raised the claim as a federal question under the Sixth Amendment.  In his Petition for Review to the Oregon Supreme Court, however, Petitioner did not refer to the Sixth Amendment.  Instead, he cited only state law in support of his argument that the jury misconduct "render[ed] the verdict impeachable, 'because justice demands that it be set aside.'"  Resp. Exh. 105, p. 20 (citing *State v. Gardner*, 230 Or. 569, 573-74 (1962)).

Because Petitioner did not raise the trial court's failure to hold an evidentiary hearing on the juror misconduct charges as a federal claim in his Petition for Review to the Oregon Supreme

Court, the claim is procedurally defaulted.  *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (a state prisoner satisfies the exhaustion requirement by fairly presenting his claim to the appropriate state courts at all appellate stages afforded under state law). In any event, the Court notes Petitioner does not establish cause and prejudice or a fundamental miscarriage of justice to excuse the procedural default.  Habeas corpus relief, therefore, may not be granted on the claim alleged in Ground Three.

## II.  Relief on the Merits

### A.   Legal Standards

When a petitioner has exhausted his federal claims, a court may grant a writ of habeas corpus only if the state court proceeding:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d).

Section 2254(d)(1) applies to purely legal questions resolved by the state court, and section 2254(d)(2) applies to purely factual questions resolved by the state court.  *Lambert v. Blodgett*, 393 F.3d 943, 978 (9th Cir. 2004), *cert. denied,* 546 U.S. 963 (2005).  Therefore, the question whether a state court

erred in applying the law is a different question from whether it erred in determining the facts. *Rice v. Collins*, 546 U.S. 333 (2006). In conducting its review, a court "look[s] to the last-reasoned state-court decision." *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003).

Section 2254(d)(1) consists of two alternative tests, *i.e.*, the "contrary to" test and the "unreasonable application" test. *Cordova v. Baca*, 346 F.3d 924, 929 (9th Cir. 2003). Under the first test, the state court's decision is "contrary to clearly established federal law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result." *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003) (citing *Williams v. Taylor*, 529 U.S. 362, 413-414 (2000)).

Under the second test, "'[a] state court's decision involves an unreasonable application of federal law if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case.'" *Van Lynn*, 347 F.3d at 738 (quoting *Clark*, 331 F.3d at 1067). Under the "'unreasonable application clause . . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law

14 - OPINION AND ORDER -

erroneously or incorrectly . . . [r]ather that application must be objectively unreasonable.'" *Clark*, 331 F.3d at 1068 (quoting *Lockyer v. Andrade*, 538 U.S. 63 (2003)).  When evaluating whether the state decision amounts to an unreasonable application of federal law, "[f]ederal courts owe substantial deference to state court interpretations of federal law." *Cordova*, 346 F.3d at 929.

Under section 2254(d)(2), applicable to purely factual questions resolved by the state court, "the question on review is whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the finding is supported by the record. " *Lambert*, 393 F.3d at 978; *see also Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004) ("a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable"). Section 2254(d)(2) "applies most readily to situations where a petitioner challenges the state court's findings based entirely on the state record.  Such a challenge may be based on the claim that the finding is unsupported by sufficient evidence, . . . that the process employed by the state court is defective, . . . or that no finding was made by the state court at all." *Taylor*, 366 F.3d at 999 (citations omitted).

In examining the record under section 2254(d)(2), the federal court "must be particularly deferential to our state court

colleagues . . . .  [M]ere doubt as to the adequacy of the state court's findings of fact is insufficient; 'we must be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate.'"  *Lambert*, 393 F.3d at 972 (quoting *Taylor*, 366 F.3d at 1000).  Once the federal court is satisfied that the state court's fact-finding process was reasonable, or, if the petitioner does not challenge such findings, "the state court's findings are dressed in a presumption of correctness, which then helps steel them against any challenge based on extrinsic evidence, *i.e.*, evidence presented for the first time in federal court."[2]  *Taylor*, 366 F.2d at 1000.

---

[2]  Under section 2254(e) "a determination of a factual issue made by a State court shall be presumed to be correct." The "AEDPA spells out what this presumption means: State-court fact-finding may be overturned based on new evidence presented for the first time in federal court only if such new evidence amounts to clear and convincing proof that the state-court finding is in error. . . .  Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play once" it is found that the state court reasonably determined the facts in light of the evidence presented in the state proceeding.  *Taylor*, 366 F.3d at 1000.

### B.    Analysis

#### 1.    Ground One - Insufficient Evidence to Support Burglary Convictions

Petitioner argues there was insufficient evidence to support his burglary convictions.  He contends that a jury could not have found beyond a reasonable doubt that he had entered or remained unlawfully on the club premises with the intent of committing the constituent weapon and firearm crimes that purported to comprise the burglary charges.  Because the felony murder indictment was predicated on the commission of the burglary charges, Petitioner also argues a finding of insufficiency of the evidence as to the burglary charges necessary nullifies the felony murder conviction.

At the close of the state's case, Petitioner moved for a judgment of acquittal on the burglary charges.  The trial court granted Petitioner's motion with respect to the unlawful possession of a firearm prong of the burglary allegations and ordered the "unlawful possession" language stricken.  The judge nonetheless denied the motion insofar as it was based on the argument that there was insufficient evidence of "unlawful *use* of a weapon" and to the extent the motion was premised on the argument that there was insufficient proof of unlawful entry.

A person commits the offense of Burglary in the First Degree under Oregon law if the person enters or remains unlawfully in a building with intent to commit a crime therein and, while in a

building or immediate flight therefrom, the person "uses or threatens to use a dangerous weapon." Or. Rev. Stat. § 164.225(1)(c). A person enters or remains unlawfully in a building when he undertakes:

> (a) To enter or remain in or upon premises when the premises, at the time of such entry or remaining, are not open to the public or when the entrant is not otherwise licensed or privileged to do so;
> (b) To fail to leave premises that are open to the public after being lawfully directed to do so by the person in charge; [or]
> (c) To enter premises that are open to the public after being lawfully directed not to enter the premises[.]

Or. Rev. Stat. § 164.205(3).

> "Open to the public" means:
>
> premises which by their physical nature, function, custom, usage, notice or lack thereof or other circumstances at the time would cause a reasonable person to believe that no permission to enter or remain is required.

Or. Rev. Stat. § 164.205(4). "Person in charge" means "a person, a representative or employee of the person who has lawful control of premises by ownership, tenancy, official position or other legal relationship," and "premises" includes "any building and any real property, whether privately or publicly owned." Or. Rev. Stat. § 164.205(5) & (6).

Property owners in Oregon have the right to determine who is licensed or privileged to enter the premises; they may condition entry to premises on rules they set, and they may exclude those who violate the rules as trespassers. *See* Or. Rev. Stat. §

164.245; *State v. Marbet*, 32 Or. App. 67, 73, 573 P.2d 736 (1978) ("[i]f the authority of the person in charge to expel an individual from the premises is not limited by a constitutional or statutory right of the individual to remain, the order must be obeyed at the risk of a conviction for trespass).

In support of his motion for acquittal (and on appeal), Petitioner argued to the trial court that the Burglary charges could not be based upon Petitioner's violation of the after-hour club's "no weapons" rule because the after-hours club itself was illegal, and an illegal business cannot "lawfully" exclude persons from its property. Petitioner cited no legal authority in support of his argument, and the trial judge rejected it:

> THE COURT:  ... It is my judgment that unlawful entry into premises with the intent to commit the crime of Unlawful Use of a Weapon, either by pointing a weapon at an individual or displaying the weapon at an individual for the purposes of threatening the individual would be a crime that supports -- would be intent to commit a crime which would support a Burglary.

Trans., pp. 626-7. As noted, the Oregon appellate courts did not reverse this analysis.

Federal courts have long recognized that "'state courts are the ultimate expositors of state law,' and [federal courts] are bound by the [state court's] construction except when it appears that its interpretation is an obvious subterfuge to evade the consideration of a federal issue.'" *Peltier v. Wright*, 15 F.3d 860, 862 (9th Cir. 1994) (citing *Mullaney v. Wilbur*, 421 U.S. 684,

19 - OPINION AND ORDER -

691 (1975)); *see also*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions"). Here, the state court's decision that Oregon law did not preclude a finding that Petitioner unlawfully entered the after-hours club by carrying a concealed weapon in violation of club rules is not reviewable. Accordingly, Petitioners statutory argument does not provide a basis for habeas corpus relief.

In any event, the evidence at trial was sufficient to sustain a conviction under Oregon law. The Due Process Clause of the Fourteenth Amendment protects the "accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). In reviewing the sufficiency of evidence to support a petitioner's state conviction, a federal habeas court must determine whether, after considering all of the evidence in the light most favorable to the prosecution, a rational trier of fact could have found each of the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Walters v. Maas*, 45 F.3d 1355, 1358 (9th Cir. 1995). The court must look to state law to determine the elements of the crime and the appropriate definition or parameters of such elements. *Jackson*, 443 U.S. at 324.

Viewing the evidence in this light, this Court concludes the jurors rationally could have found Petitioner guilty of the burglary charges and, consequently, of felony murder predicated on burglary. Petitioner knew guns were not allowed inside the after-hours club. He intentionally sought to avoid this policy by hiding the gun in the back of his waistband. Petitioner entered the club knowing he was violating the club's rules. He was, therefore, not licensed or privileged to be on the premises under Oregon law, and there was sufficient evidence to support the jury's guilty finding based upon his unlawful use of a weapon. Accordingly, Petitioner is not entitled to habeas corpus relief on this claim.

**2.  Ground Two - Vagueness of Oregon Burglary Statute**

In Ground Two, Petitioner alleges his Fifth and Fourteenth Amendment due process rights were violated because the indictment language charging him with having "entered and remained unlawfully" in the after-hours club was unconstitutionally vague.

A statute is unconstitutionally vague in violation of the Due Process Clause "if it fails to 'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary or discriminatory enforcement.'" *Free Speech Coalition v. Reno*, 198 F.3d 1083, 1095 (9th Cir. 1999) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)); *see also Grayned v. City of*

*Rockford*, 408 U.S. 104, 108-09 (1972).  Vagueness challenges to statutes not implicating the First Amendment should be examined in light of the facts of the case at hand; the statute is judged on an as-applied basis.  *United States v. Mazurie*, 419 U.S. 544, 550 (1975).

The "fair notice" test of vagueness "looks at the 'very words' of the statute in question to determine whether the statutory language is 'sufficiently precise to provide comprehensible notice' of the prohibited conduct."  *Anderson v. Morrow*, 371 F.3d 1027, 1032-33 (9th Cir. 2004) (citing *United States v. Vasarajs*, 908 F.2d 443, 448 (9th Cir. 1990)).  The "arbitrary and discriminatory enforcement" prohibit requires a legislature to "establish minimal guidelines to govern law enforcement."  *Kolender*, 461 U.S. at 357.  "Where the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep (that) allows policemen, prosecutors, and juries to pursue their personal predilections.'"  *Id.* at 357-58 (citing *Smith v. Goguen*, 415 U.S. 566, 575 (1974)).

The Oregon burglary statute prohibits entering or remaining on non-public premises unless "licensed or privileged to do so." Or. Rev. Stat. § 164.205(3)(a).  As noted, property owners may condition entry to the premises on rules they set, and they may exclude those who violate the rules as trespassers.  Or. Rev. Stat. § 164.245.  The trial judge explicitly rejected Petitioner's

void-for-vagueness claim against these laws, as applied to Petitioner's entry to the after-hours club in violation of the property owner's "no guns" rule. Because this decision was not objectively unreasonable or contrary to clearly established federal law, Petitioner is not entitled to habeas corpus relief on this claim.

### 3.  Ground Four - Voluntariness of Petitioner's Statements to Police

In Ground Four, Petitioner alleges his Fifth Amendment rights were violated because the trial court denied his motion to suppress and admitted into evidence the statements Petitioner allegedly made to the police in the hospital. The court notes Petitioner denies he made the statements at issue.

Under the Fifth Amendment, "[n]o person . . . in any criminal case shall be compelled to be a witness against himself." Before a confession may be admissible against a defendant, the burden is on the prosecution to show that any statements made by him were made voluntarily. *Arizona v. Fulminante*, 499 U.S. 279, 288 (1991). The test for voluntariness of a confession is whether, considering the totality of the circumstances, it is "the product of an essentially free and unconstrained choice by its maker" or was made because "his will has been overborne and his capacity for self determination critically impaired." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973).

Courts should consider such factors as the age and general mental status of an accused, his psychiatric state, and his intoxication by drugs as circumstances in determining the voluntariness of a defendant's confession. *See Blackburn v. Alabama*, 361 U.S. 199, 207-08 (1960) (general mental status); *Fikes v. Alabama*, 352 U.S. 191, 193 (1957) (psychiatric state relevant to determination of voluntariness); *Beecher v. Alabama*, 408 U.S. 234, 237 (1972) (confession suppressed where statement made shortly after receipt of morphine injections). A confession may be inadmissible as involuntary where it is the product of outrageous police tactics. *Mincey v. Arizona*, 437 U.S. 385 (1978).

Here the officers went to Petitioner's hospital the day after the shooting, but they decided not to question him when they found Petitioner obviously heavily medicated. Upon their return the next day, the nurse told them Petitioner seemed better, and was no longer on morphine. The officers' assessment of Petitioner corroborated what the nurse said: Petitioner was tracking questions, had better color in his face, seemed more coherent, and said he felt all right.

The officers advised Petitioner of his *Miranda* rights, which he said he understood and waived in writing. They interviewed him initially for about an hour and half. After first telling one version, Petitioner recanted and confessed he had fired the shots.

To ensure Petitioner was rested before they tape-recorded his statement, the officers left and returned about one and a half hours later.

Upon their return, the officers interviewed Petitioner and tape-recorded the interview. During the interview, Petitioner did not protest the questioning and made no indication he had protested or asserted his *Miranda* rights during the earlier, unrecorded interview.

The trial judge listened to the tape-recorded interview prior to the suppression hearing. At the hearing, one of the officers testified as to what occurred before and during the interview. Petitioner testified he did not want to talk with police, he was drowsy from his medication and in pain whenever he tried to move, and he was overwhelmed by the officers. The defense also presented testimony of a forensic psychologist who opined that, at the time of the interview, Petitioner was impaired in his ability to process and to articulate information which, when combined with the effects of the medication he was taking, was "enough to cast serious doubt, in my mind, as to whether or not [Petitioner] would be willfully and intentionally responding to waiver of rights or requests for information." Transcript, Volume I, P. 104.

The trial judge found Petitioner's testimony at the suppression hearing that he had not wanted to talk and that he had been overwhelmed by the officers was not credible. The judge

noted that Petitioner sounded remarkably coherent during the taped interview and that, during this interview, he made no protest or reference to protesting during the prior session.    The judge considered the psychologist's testimony, but nonetheless concluded that Petitioner's taped statement did not seem to have been made under the influence of medication.    With respect to the earlier, un-taped interview, the judge said:

> And I really have to consider the medication issues
> going back three hours to the first interview because if
> there was an impairment and inability to waive then,
> improved conditions wouldn't eradicate that.    But it
> appears to me that there was an understanding of the
> right to an attorney, the right not to speak, and a
> choice to go ahead and speak, for whatever reasons.    And
> I just have to deny the motion.    I'm going to let the
> statements in.

Transcript, Volume I, p. 127.

Under these circumstances, the trial judge reasonably determined Petitioner knowingly and voluntarily made his statements to the officers in light of the evidence presented. The findings are, therefore, entitled to a presumption of correctness that can only be rebutted by clear and convincing evidence, and Petitioner has not met that burden in this record. Because the trial court's decision to allow the statements in evidence was neither contrary to nor an unreasonable application of clearly established federal law, Petitioner cannot prevail on this habeas corpus claim.

### 4.    Ground  Five  -  Ineffective  Assistance  of Appellate Counsel

Petitioner claims appellate counsel provided ineffective assistance of counsel by failing to assign as error on appeal the trial court's denial of Petitioner's motion for acquittal based on a material variance between the language of the indictment and the State's proof at trial.  Petitioner argues the indicted charges were based on Petitioner's intent to harm Stacy Saab, but, at trial the State presented evidence supporting an allegation that Petitioner illegally entered the premises with the intent to harm another individual.

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel.  The Supreme Court's ruling in *Strickland v. Washington*, 466 U.S. 668 (1984) sets forth the "clearly established federal law" governing claims alleging ineffective assistance of counsel. *Williams*, 529 U.S. at 390.

Under *Strickland,* to prevail on a claim of ineffective assistance of counsel, Petitioner must show that (1) his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. 668, 687 (1984); *Bell v. Cone,* 535 U.S. 685, 698-99 (2002).  Failure to make the required showing on either prong defeats the ineffectiveness claim.  *Strickland*, 466 U.S. at 697.

The principles in *Strickland* also govern claims of ineffective assistance of appellate counsel. *Smith v. Murray*, 477 U.S. 527, 535-36 (1986). To prevail on an ineffective assistance of appellate counsel claim, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, petitioner would have prevailed on appeal. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

To prevail on this claim, therefore, Petitioner must show that appellate counsel was objectively unreasonable in failing to appeal on the basis of the alleged material variance; Petitioner also must show there was a reasonable probability he would have prevailed on appeal had appellate counsel done so. In his PCR proceeding, Petitioner presented a letter authored by his trial counsel advising appellate counsel of potential claims for appeal. The letter included the material variance issue. Other than his own testimony, Petitioner presented nothing further to support his claim.

The State, however, offered a letter from appellate counsel as evidence Petitioner was not entitled to relief. In the letter, which was admitted as evidence in the PCR proceeding, Petitioner's appellate attorney explained her reason for omitting this claim on appeal:

> Second, [Petitioner] alleges that I was ineffective for failing to "raise the variance issue of the state changing the theory of the case from Stacy Saab to

Ritchie Jones." [Petitioner] moved for a judgment of acquittal arguing, *inter alia*, that the state failed to present evidence that [Petitioner] unlawfully entered and remained in the premises while causing physical injury to (in count 4) and while using a handgun upon (in count 6) Stacey Saab. [Petitioner] argued that the state's evidence showed only an intent to use a weapon against Ritchie Jones, but the state could not rely on that evidence because the indictment alleged that [Petitioner] intended to use a weapon against Saab; to argue otherwise would constitute an unlawful variance. [Citation to record omitted.] I did not renew this challenge on appeal because it was my opinion that no material variance was present in this case. The indictment alleged [Petitioner] committed the crimes against "Stacy Saab <u>and other unknown persons</u>" (emphasis added); thus, the indictment expressly acknowledged and included other victims such as Ritchie. Moreover, the identity of the victim does not appear to be a material element of the crime, so even if a variance were present, it would not constitute a material variance. For these reasons, I exercised my professional judgment to include the other assignments of error in the brief over this one, because I believed them to carry a greater likelihood of success.

Resp. Exh. 116, pp. 1-2 (emphasis in original).

Appellate advocacy requires counsel to use professional judgment in determining which claims to present on appeal. *Smith*, 477 U.S. at 536. Petitioner had the burden of showing appellate counsel's failure to appeal the material variance issue was objectively unreasonable and that there was a reasonable probability he would have succeeded on the claim. The PCR trial record shows Petitioner did not do so. As such, it was neither contrary to nor an unreasonable application of *Strickland* for the PCR trial court to credit appellate counsel's letter and deny Petitioner relief. The state PCR court's decision is entitled to

29 - OPINION AND ORDER -

deference, and Petitioner is not entitled to habeas corpus relief in this court.

## CONCLUSION

For these reasons, the court DENIES the First Amended Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2254 and DISMISSES this action.

IT IS SO ORDERED.

DATED this  19th  day of May, 2009.


            /s/ Anna J. Brown
            ANNA J. BROWN
            United States District Judge

P:\Brown-LawClerks\06-1535williams0519opin.wpd